**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Gehring, et al., | No. CV-25-00367-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Osaic Holdings Incorporated, et al., | |
| Defendants. | |

This case concerns cash-sweep programs through which defendants transferred customers' uninvested cash to participating banks, paid customers a fraction of the resulting interest, and kept the remainder. Plaintiffs allege defendants operated those programs to keep customer interest rates artificially low and retain an excessive share of the returns generated by customers' cash. After the court granted in part defendants' first motions to dismiss, plaintiffs filed a second amended complaint revising their unjust-enrichment claims and adding claims for breach of the implied covenant of good faith and fair dealing. The present motion to dismiss is granted in part and denied in part, and the motion for reconsideration is denied.

## I.    Background

The court's January 30, 2026, order provides a more detailed account of the parties, relevant corporate acquisitions, and operation of the cash-sweep programs. (Doc. 45 at 1–5.) Only a brief summary and the subsequent procedural history are necessary here.

In 2022, Osaic, Inc. acquired the companies that owned defendant American

Portfolios Advisors, Inc. ("APA") and its affiliated broker-dealer, American Portfolios Financial Services ("APFS"). (Doc. 49 at 7–8.) APA and APFS were later integrated into their successor-in-interest Osaic Wealth, Inc. (Doc. 49 at 8.) Infinex Financial Group was acquired in 2022 and later integrated into its successor-in-interest Osaic Institutions, Inc. (Doc. 49 at 7–8.) Together, APA, Osaic Wealth, and Osaic Institutions are referred to here as "Osaic Broker-Advisors."

Plaintiff Robert Gehring maintained an advisory individual retirement account with APA and a separate non-advisory account through APFS and its successor Osaic Wealth. (Doc. 49 at 6.) Plaintiffs Harold Hunt and Jeana Norris maintained self-directed IRAs through Infinex and its successor Osaic Institutions. (Doc. 49 at 6–7.) Plaintiffs allege defendants automatically transferred their uninvested cash into cash-sweep programs, where it earned unreasonably-low interest. (Doc. 49 at 6–7.) The first amended complaint asserted claims for breach of fiduciary duty, breach of contract, unjust enrichment, and violations of the Investment Advisers Act ("IAA"). (Doc. 17 at 46–50.) In January 2026, the court granted in part and denied in part defendants' motions to dismiss. (Doc. 45 at 18–19.) Gehring's breach-of-contract claims against APA and Osaic Wealth, Hunt's and Norris's breach-of-contract claims against Osaic Institutions, and Gehring's fiduciary-duty claim based on his APA advisory account were allowed to proceed. (Doc. 45 at 12–16.) The court dismissed all claims against Osaic, Inc., the fiduciary-duty claims against Osaic Wealth and Osaic Institutions, the unjust-enrichment claims, and the IAA claims, but granted plaintiffs leave to amend. (Doc. 45 at 7–11, 15–19.)

Plaintiffs filed the second amended complaint ("SAC") in February 2026. (Doc. 49.) The SAC leaves the prior complaint's factual allegations unchanged (Doc. 67 at 7) but revises the unjust-enrichment claims and adds new claims against the Osaic Broker-Advisors for breach of the implied covenant of good faith and fair dealing. (Doc. 49 at 48–51.) Plaintiffs also repleaded claims the court previously dismissed against Osaic, Inc., the fiduciary-duty claims against Osaic Wealth and Osaic Institutions, and the IAA claims (Doc. 49 at 46–52) only to preserve their appellate rights; they do not ask the court to

reconsider its prior order (Doc. 67 at 21–22).

## II.   Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III.   Analysis

Defendants move to strike or dismiss the new implied-covenant claims, dismiss the revised unjust-enrichment claims, and dismiss with prejudice the claims plaintiffs asserted only to preserve their appellate rights. (Doc. 58.) Defendants also seek reconsideration related to Hunt and Norris's breach-of-contract claims based on their pre-Osaic-acquisition Infinex accounts. (Doc. 47.)

### A.   Implied Covenant[1]

Plaintiffs' implied-covenant claims allege the governing agreements gave customers reasonable expectations that their interest rates would vary with market conditions and increase as prevailing interest rates rose. (Doc. 49 at 48–50.)

Both New York and Connecticut law imply a covenant of good faith and fair dealing in every contract, requiring that neither party act to deprive the other of the benefits of the

---

[1] Defendants argue plaintiffs were granted leave to amend their existing claims, not to add new claims. But even if plaintiffs should properly have filed a separate motion to amend before including the new claims, the parties have now had ample opportunity to brief the viability of those claims and there is no plausible basis on which leave to amend would have been denied. Put in terms of the standard that would have applied if plaintiffs had filed a motion to amend, defendants have not shown prejudice, bad faith, undue delay, or any other reason warranting exclusion of the newly-added claims given the early stage of this litigation. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("prejudice to the opposing party . . . carries the greatest weight"). The court therefore declines to strike those claims.

- 3 -

agreement. *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995); *Habetz v. Condon*, 618 A.2d 501, 505 (Conn. 1992).

Under New York law, a plaintiff must plead facts showing the defendant sought to prevent performance or withhold the contract's benefits. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). The implied covenant cannot impose obligations inconsistent with the contract's terms, but it does cover "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Id.* at 501 (simplified). Where a contract gives a party discretion, the covenant includes a promise not to exercise that discretion arbitrarily or irrationally. *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011).

Under Connecticut law, a plaintiff must plead: (1) the parties had a contract under which the plaintiff reasonably expected to receive certain benefits; (2) the defendant engaged in conduct that injured the plaintiff's right to receive those benefits; and (3) the defendant acted in bad faith in doing so. *See Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 359–60 (D. Conn. 2014). Bad faith "in general implies . . . actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 142 A.3d 227, 238 (Conn. 2016). It may consist of inaction, and evading the spirit of the contract may be enough to infer bad faith. *Id.*

The SAC plausibly states an implied-covenant claim under New York law. It alleges documents governing or describing the sweep program represented that APA and Osaic Wealth would periodically review and adjust sweep rates based on economic, market, and business conditions, while leaving them discretion over the rates ultimately paid to customers. (*See* Doc. 49 at 16–43.) Whether those representations constitute express contractual terms remains unresolved. (*See* Doc. 45 at 12–13.) The breach-of-contract claim asks whether the documents forming the contracts imposed express rate-setting or periodic-review obligations and, if so, whether defendants failed to perform them. (Doc. 49 at 16–20, 47–48.) The implied-covenant claim addresses a different possibility:

defendants considered the identified conditions but exercised their discretion improperly by keeping customer rates artificially low to increase the share of interest they retained for themselves, despite allegedly having the leverage and bargaining power to obtain higher rates for their customers. (Doc. 49 at 27–43, 48–50.) If so, their conduct could plausibly deprive Gehring of the expected benefit of an interest-bearing sweep program without violating any specific express term.

Defendants argue New York law bars Gehring's implied-covenant claim because it relies on the same allegations and seeks the same damages as the contract claim. (Docs. 58 at 9–12; 70 at 11–13 (citing *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022)).) That argument does not warrant dismissal. The court has not yet determined which of the various account agreements, disclosures, program descriptions, and other materials comprise the parties' contracts. The prior order held only that, assuming the materials plaintiffs identified are contractual, they plausibly impose ongoing rate-setting and periodic-review obligations; it did not definitively interpret the contracts or decide whether they expressly require payment of "reasonable" rates. (Doc. 45 at 12–13.)

That uncertainty leaves room for distinct theories of breach. If the materials containing periodic-review or reasonable-rate language form part of the contracts, defendants' failure to comply with those provisions may constitute an express breach. But if some of those materials are not incorporated, the express contractual duties—and thus the contract claim—may be narrower. Even then, those materials may inform the expectations that reasonably arose from the contractual relationship, including that defendants would not exercise their rate-setting discretion arbitrarily or irrationally to maximize their own revenue. The implied-covenant claim thus addresses conduct that may frustrate the bargain without violating any express contractual term. Because the contracts' contents, the obligations arising under each theory, and the damages attributable to any violation remain unresolved, the claims may proceed in the alternative, although plaintiffs may not obtain a double recovery. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018); *see also Goldsmith v. UBS Fin. Servs. Inc.*, No. 1:24-CV-6354-GHW, 2026

WL 819461, at *17–18 (S.D.N.Y. Mar. 25, 2026); *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 714–16 (S.D.N.Y. 2025).

Hunt and Norris also plausibly state claims under Connecticut law. The SAC alleges Osaic Institutions controlled both the customer rates and the fees it received from program banks, knew market conditions had changed substantially, yet deliberately kept customer rates artificially low despite those changing conditions to retain more of the resulting revenue for itself. (Doc. 49 at 16–43, 48–50.) Taken together, those allegations plausibly support an inference of conscious evasion of the bargain's spirit rather than negligence or an honest mistake. *See Geysen*, 142 A.3d at 238. The motion to dismiss the implied-covenant claims is denied.

### B. Unjust Enrichment

Plaintiffs have revised the unjust-enrichment claims that were previously dismissed. (Docs. 45 at 17; 49 at 50–51.) Under New York law, unjust enrichment is unavailable when a valid contract governs the subject matter or the claim merely duplicates a conventional contract claim. *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 33–34 (N.Y. 2005); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Connecticut law likewise bars unjust enrichment when an express contract governs the same subject matter. *Meaney v. Conn. Hosp. Ass'n, Inc.*, 735 A.2d 813, 823 (Conn. 1999).

Plaintiffs' unjust-enrichment claims do not allege the governing contracts were nonexistent, invalid, or unenforceable, or that the contracts did not govern defendants' treatment of plaintiffs' swept cash. (Doc. 67 at 15 n.8; *see also* Doc. 45 at 17.) Instead, the SAC alleges the governing agreements incorporated the cash-sweep documents and imposed rate-setting and periodic-review obligations. (*See* Doc. 49 at 16–28, 47–51.) Plaintiffs characterize the disagreement as being whether those contracts required periodic review and reasonable sweep rates. (Doc. 67 at 19.) Simply put, the parties dispute what rate-setting duties the contracts imposed, not whether the contracts governed defendants' operation of the cash-sweep programs. *See Goldsmith*, 2026 WL 819461, at *23–24.

The prior order, issued before plaintiffs added implied-covenant claims,

contemplated unjust enrichment being pleaded in the alternative. (Doc. 45 at 17.) The SAC changes that calculus. The implied-covenant claims now address the potential gap between the express contractual duties and defendants' alleged misuse of whatever rate-setting discretion remained. The unjust-enrichment claims, meanwhile, rest entirely on the same alleged underpayment—that defendants paid plaintiffs too little interest and retained the difference—without alleging why equity or good conscience would require anything more. Because valid contracts govern the cash-sweep programs and the breach-of-contract and implied-covenant claims now together encompass any alleged underpayment, the unjust-enrichment claims are dismissed as duplicative. *See id.*; *In re JPMorgan Chase Cash Sweep Program*, No. 24 CIV. 6404 (LGS), 2026 WL 396055, at *11 (S.D.N.Y. Feb. 12, 2026).

### C. Motion for Reconsideration

Defendants seek reconsideration to clarify that Hunt's and Norris's surviving breach-of-contract claims do not encompass any Infinex cash-sweep program pre-dating Osaic's 2022 acquisition. (Doc. 47 at 1–3.) Reconsideration is an extraordinary remedy warranted only on a showing of manifest error or new facts or legal authority that could not previously have been presented, and a motion may not merely repeat an argument made in the original briefing. LRCiv 7.2(g); *see Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Defendants raised this same Infinex argument in their original motion to dismiss. (Doc. 47 at 3.) The court nevertheless concluded plaintiffs plausibly alleged that the governing cash-sweep agreements imposed continuing rate-setting and review obligations and that defendants breached those obligations. (Doc. 45 at 12–13.) The order did not conclusively determine which agreements governed each period or what specific obligations each one imposed in finding plaintiffs had alleged enough to proceed past the pleading stage on their breach-of-contract claims. (Doc. 45 at 13.) Defendants' disagreement with that ruling does not establish manifest error or otherwise warrant reconsideration. LRCiv 7.2(g); *see Kona Enters.*, 229 F.3d at 890. The motion for reconsideration is denied.

- 7 -

### D. Leave to Amend

Plaintiffs previously received leave to amend but their revised unjust-enrichment claims remained deficient. Those revised claims and all other previously-dismissed claims are therefore now dismissed with prejudice. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008).

Accordingly,

**IT IS ORDERED** the motion to dismiss (Doc. 58) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** the motion for reconsideration (Doc. 47) is **DENIED**.

Dated this 20th day of July, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**